**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DIANA PONCE, et al., § | |
|     *Plaintiffs*, § | |
| § | |
| vs. § | **Civil Action No. 3:22-cv-00277-S** |
| § | |
| KIA AMERICA, et al., § | |
|     *Defendants*. § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**To the Honorable Judge of Said Court:**

COME NOW, Diana Ponce and Eusebio Cano (hereinafter referred to as "Plaintiffs"), and respectfully file this First Amended Complaint against Kia America, Inc., and Kia Corporation (hereinafter referred to collectively as "Kia" or "Defendants").

In support hereof, Plaintiffs would state and show unto this Honorable Court the following:

**I. Parties**

1. Plaintiff Diana Ponce is an individual. She resides in and is a citizen of Kaufman, Texas. She is the biological mother of M.C., a deceased minor child.

2. Plaintiff Eusebio Cano is an individual. He resides in Dallas County, Texas. He is the biological father of M.C., a deceased minor.

3. Defendant Kia America, Inc., is a foreign corporation at all times doing business in Texas, and service of process upon this Defendant has already been performed.

4. Defendant Kia Corporation is a foreign corporation at all times doing business in Texas, and service of process upon this Defendant has already been performed.

## II. Jurisdiction and Venue

5. This Court has jurisdiction over the lawsuit under the provisions of 29 U.S.C. §1332.

6. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## III. Facts

7. On or about March 19, 2021, Plaintiff Leija was driving a 2016 Kia Soul (VIN#KNDJP3A57G7271652)("subject vehicle").

8. Plaintiff, Diana Ponce, was the front passenger of the subject vehicle.

9. M.C., a deceased minor child, was the rear passenger of the subject vehicle.

10. Decedent Joyce Townsend, was operating another vehicle when she failed to yield right of way while attempting to make a turn causing a collision with the subject vehicle.

11. The subject vehicle was designed by one or more of the Kia Defendants.

12. The subject vehicle was manufactured by one or more of the Kia Defendants.

13. The subject vehicle was also assembled and tested and marketed by one or more of the Kia Defendants.

14. At the time of the accident, Plaintiff Ponce and deceased minor child, M.C., were properly seated and properly wearing the available seatbelts.

15. However. despite being properly seated and properly wearing the available seatbelts, Plaintiff suffered serious injuries and M.C. sustained fatal injuries during the accident sequence when the vehicle failed to protect them because it violated several crashworthiness principles.

## IV. Crashworthiness Overview

16. Crashworthiness is the science of preventing or minimizing injuries or death following an accident through the use of a vehicle's various safety systems.[1]

17. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    1. maintain survival space;
    2. provide proper restraint throughout the entire accident;
    3. prevent ejection;
    4. distribute and channel energy; and
    5. prevent post-crash fires.

18. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

19. The National Transportation Safety Board (NTSB) has also stated that, "Vehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space

---

[1] In any crashworthiness case, the distinction between the cause of an accident versus the cause of injuries is an important one. One of the best analogies is the case of the Titanic. While the cause of hitting the iceberg has been the subject of much debate (inattentiveness, the captain may have been drinking, they were going too fast, etc.), there is no question that every passenger which entered a lifeboat that night lived, while 99% of those who went in the water died. Accordingly, had the Titanic had enough lifeboats on board (i.e., the boat's "safety systems"), 100% of the people on-board would probably have lived. So, the cause of the sinking (the accident) is irrelevant vis-à-vis how everyone died. What's important is how the safety systems worked (or didn't work) following the accident.

around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

20. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails. For example, in a rollover, if the roof collapses such that no survival space is left, it does not matter what kind of restraint system, glass, fuel system, or energy absorbing system is used, because these systems have been rendered moot.

21. Vehicle manufacturers have known for decades and have admitted under oath that there is a distinction between the cause of an accident versus the cause of an injury.

## V. Duty to Make a Safe Vehicle

22. For decades, automobile manufacturers have been telling the general public and others how important it is to make safe vehicles.

23. For instance, in 1993, General Motors stated that "Safety isn't one thing. It's everything." Mary Barra, CEO of General Motors, testified to Congress in 2014 that, "Our customers and their safety are at the center of everything we do." Jeff Boyer, Vice-President of Global Vehicle Safety at General Motors, has stated that "Nothing is more important than the safety of our customers in the vehicles they drive."

24. General Motors has stated in the past that, "The rich don't deserve to be safer… Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

25. Lee Iacocca, former President of Ford Motor Company stated, "while President and CEO of Chrysler, that "Every American has the right to a safe vehicle." Gerald Greenwald, chairman of Chrysler, then sent a letter to every Chrysler dealership in 1988 stating that Chrysler intended to honor that right.

26. In 2012, Volvo stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

27. BMW has stated that BMW vehicles are designed to minimize the effects of accidents. BMW has also stated that the cornerstone of BMW's design philosophy is "Safety – during and after an accident."

28. Honda believes that safety is for everyone, including for other vehicle occupants and for pedestrians.



29. In 1991, Toyota said that "Toyota engineers are faced with making all vehicles as safe as humanly possible."

> **Passive Safety**
>
> **Future Trends**
> Toyota engineers are faced with making all vehicles as safe as humanly possible. On the other hand, vehicle weight will become even more important in the future as lighter vehicles use less resources and less fuel. And, as new materials emerge and computer-aided engineering techniques and technology advance, lighter vehicles with maximum safety will surely come.

## VI. Kia and Safety

30. For decades, Kia has noted that it has a corporate culture that respects human beings.

31. Kia has bragged that its cars are getting smarter and safer.

32. Kia has touted that its vehicles utilize safety features as standard equipment that other luxury cars include as options because at Kia, "safety is never an option."

33. Kia has stated that in designing and testing its vehicles, there's nothing Kia considers more important than safety.

34. Kia has stated that it strives to achieve crashworthiness results that far exceed those required by law.

35. Kia has said that no one can predict a collision occurring, but you can trust a Kia vehicle to protect you should the unforeseen happen.

36. Kia has further stated that Kia works tirelessly to ensure that every safety system on its vehicles is designed to help people handle the unexpected.

**VII. Cause(s) of Action as to Defendants Kia Corporation and Kia America, Inc.**

37. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

38. The Kia Defendants are in the business of designing, manufacturing, testing, assembling, marketing and/or distributing vehicles, including the subject vehicle.

39. The Kia Defendants designed, manufactured, tested, assembled, marketed, distributed, and/or sold the vehicle that was involved in the accident that left Plaintiff Ponce with serious injuries and M.C. with fatal injuries.

40. The vehicle was defective and unreasonably dangerous for its intended use.

41. The vehicle was defective at the time it left the Kia Defendants' control.

42. Reasonable consumers would not have been aware of the defective condition of the vehicle.

43. Plaintiffs were not aware of the defects in the subject vehicle.

44. It was entirely foreseeable to and well-known by the Kia Defendants that accidents and incidents involving their vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

45. The injuries, complained of herein, occurred because the subject vehicle in question was not reasonably safe, and was not reasonably fit for unintended, but clearly foreseeable accidents. The vehicle in question was unreasonably dangerous.

46. Kia Defendants, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, ad/or tested said vehicle in question.

47. As detailed herein, the vehicle contains and/or Kia Defendants has committed either design, manufacturing, marketing, assembling, and/or testing defects.

48. Kia Defendants either knew or should have known of at least one safer alternative design which would have prevented the serious and fatal injuries complained of herein.

49. The vehicle was defective and unreasonably dangerous, Kia Defendants were negligent and Kia Defendants misrepresented the safety of the vehicle for the following, non-exhaustive list of reasons:

   a. The vehicle violated principles of crashworthiness;
   b. The front passenger's seatbelt allowed forward excursion over 2 feet due to the load limiter which permitted submarining;
   c. The front passenger seat cushion collapsed which permitted submarining;
   d. The front passenger seat failed to contain a seat cushion airbag to prevent submarining;
   e. The front passenger seat failed to contain a knee bag that would help prevent submarining;
   f. The front passenger seat failed to provide proper restraint;
   g. The front seatbelt permitted excessive forward excursion;
   h. The front seatbelt permitted the pretensioner to be rendered ineffective by the load limiter;
   i. The rear outboard seat failed to properly restrain an 8 year old child and he died of massive internal organ injuries due to submarining;
   j. No crash test with rear seated child sized ATD's were conducted;
   k. No sled test with rear seated ATD's of any size were conducted;
   l. The vehicle was not subjected to FEM/finite element method testing where children in all three rear seating positions were evaluated under different accident scenarios;
   m. The vehicle was not subjected to simulated crash testing where children and occupants of different sizes were sitting in all three rear seating positions;
   n. The vehicle's rear seat restraint system failed to contain load limiters, pretensioners, seat cushion airbags to prevent submarining and anti-submarining features;
   o. The vehicle failed to provide equal restraint protection to the rear seated occupants as it did for the front seated occupants;

- p. The vehicle failed to contain state of the art safety systems in the rear seat that are available in the front seat;
- q. The vehicle's rear seat position is too hard and a restrained occupant can submarine under the seatbelt;
- r. The vehicle's rear seat position's seatbelt geometry promotes submarining due to its design and anchor locations;
- s. The front and rear restraint system on the vehicle has no utility since it fails to serve the purpose of restraint systems;
- t. The front and rear seat restraint system violates the principles of a restraint system;
- u. The front and rear seat restraint system violates principles of crashworthiness;
- v. The rear seat restraint system violates the Designated Seating Position doctrine established by NHTSA;
- w. Defendants violated the NHTSA's Due Care Test Provision;
- x. The Plaintiff owner of the subject vehicle, had watched commercials and reviewed ads and other marketing literature from Kia over the years and decided on this vehicle because it was touted as a safe, family vehicle;
- y. Defendants bragged, touted and marketed its vehicles as being safe, state of the art, engineered to be the best and engineered to protect families;
- z. The Plaintiff owner of the subject vehicle chose the subject vehicle because of these commercials, ads and marketing statements;
- aa. The ads, commercials and marketing material turned out to be false, misleading and deceptive in the opinion of the vehicle owner after this accident was over;
- bb. The subject vehicle platform violated Defendants' core design principles, marketing principles and safety principles that it has espoused for decades;
- cc. According to Defendants, building safe vehicles is the most important thing we do;
- dd. According to Defendants, automobile safety is the foundation of automobile manufacturing;
- ee. According to Defendants, we have built a storehouse of safety technology since our first vehicle was built;
- ff. According to Defendants, safety is one of our foremost concerns;
- gg. According to Defendants, passive safety engineering means to ensure occupant survival with the least injuries in as many accident situations as possible;
- hh. According to Defendants, the front and rear seated occupants deserve equal protection;

ii. According to Defendants, safety is always on our mind;
jj. Defendants are fully aware of its responsibility to produce vehicles with the best overall safety possible;
kk. Defendants collect accident data and applies that data to the planning and design of new models to continuously improve automobile safety;
ll. According to Defendants, a safe vehicle must be properly developed, designed, engineered and tested;
mm. According to Defendants, it is very important to protect all occupants as much as possible;
nn. According to Defendants, they work hard to stay at the cutting edge of technology;
oo. According to Defendants, computer aided engineering is indispensable to our prototype development process;
pp. According to Defendants, they use CAE to test new design ideas and structures;
qq. According to Defendants, they use finite element method to create models to simulate real testing;
rr. According to Defendants, the most important component in occupant safety is the restraint system;
ss. According to Defendants, they believe that safety is fundamental for making vehicles;
tt. According to Defendants, they always work to improve by putting forth new ideas and making the best of our abilities;
uu. According to Defendants, we believe that everyone deserves to be safe;
vv. According to Defendants, no matter who you are and what you drive, everyone deserves to be safe;
ww. According to Defendants, they have the most sophisticated testing facility and programs in the world;
xx. According to Defendants, they are a pioneer in vehicle crash testing;
yy. According to Defendants, they use super computer backed CAE systems that play a significant role in developing, designing and engineering its vehicles;
zz. According to Defendants, they create vehicles with your family in mind;
aaa. Defendants abandoned its role in developing, designing, engineering and testing the subject vehicle;
bbb. Defendant failed to use the body of knowledge that it had learned since it developed its first vehicle;
ccc. Consumers expect Kia to use state of the art engineering, material and designs yet the subject vehicle fell short;

    ddd.  Consumers expect Kia to provide safe vehicles that have been tested and subjected to rigorous engineering analysis;
    eee.  The owner of the vehicle relied on the safety representations of Defendants;
    fff.  The Plaintiff owner of the vehicle chose the subject vehicle solely because of the safety representations;
    ggg.  The Defendants violated consumer expectations; and/or
    hhh.  The defects, negligence, deceptive, false and misleading marketing and violations of consumer expectations were the direct, producing, substantial and proximate cause of the injuries and damages.

50. Defendants further failed to conduct proper testing and engineering analysis during the design, development and testing of the vehicle.

51. Defendants were further negligent in the manufacture, assembly, marketing and/or testing of the vehicle in question.

52. As noted earlier, most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health and welfare of the public."

53. Accordingly, since paramount means "superior to all others", all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles. Indeed, Kia has admitted that its engineers have to hold paramount the safety, health and welfare of the public.

54. However, Defendants failed to conduct proper testing and engineering analysis during the design, development and/or testing of the vehicle.

55. In designing a vehicle, efforts should be made by manufactures to identify potential risks, hazards and/or dangers that can lead to serious injuries or death. Kia has admitted this in sworn testimony.

56. One potential risks, hazards and or dangers are identified, then the potential risks, hazards and/or dangers should be eliminated if possible.

57. Once potential risks, hazards and/or dangers can't be eliminated, they should be guarded against.

58. If potential risks, hazards and/or dangers cannot be eliminated or guarded against they should at least be warned about.

59. A company that does not conduct proper engineering analysis that would help to identify potential risks, hazards and/or dangers that could seriously injure someone is negligent.

60. Based upon information and/or belief, the subject vehicle was not subjected to rigorous engineering analysis such as DFMA, FMEA, failure mode effects analysis, fault tree analysis, root cause analysis, risk hazard analysis, cost benefit analysis, or by whatever name called.

61. Based upon information and/or belief, the subject vehicle was not subjected to FEM or finite element modeling.

62. Based upon information and/or belief, the subject vehicle was not subjected to computerized accident simulations.

63. Kia's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

64. When Kia designed the subject vehicle, they did not reinvent the wheel. The Kia Defendants used (or should have used) an enormous amount of human capital which had been acquired from numerous different engineers who had worked on many prior vehicles. This knowledge would have been (or should have been) utilized in different aspects of the designs of the vehicle to make the vehicle safer by eliminating or reducing risks, hazards and dangers.

65. The Kia Defendants are currently in exclusive possession and control of all technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. The Kia Defendants are also in possession of what, if any, engineering analysis was performed on the subject vehicle.

66. However, it is expected that after all of those materials are produced in discovery and/or after the Kia Defendants' employees and corporate representatives have been deposed, additional allegations may come to light.

67. Lastly, the materials from other models, years, and countries will provide evidence regarding what the Kia Defendants knew, when they knew it, and about what was utilized or not utilized as well as the reasons why.

68. The foregoing acts and/or omissions, defects and/or negligence of Defendants were the producing, direct, proximate and/or legal cause of the serious and fatal injuries complained of herein.

## VIII. Damages to Plaintiffs

69. As a result of the acts and/or omissions of one or more of the Defendants, Plaintiff Ponce has suffered past and future: pain and suffering, mental anguish, emotional distress, disfigurement, physical impairment, hedonic damages, lost wages, diminished earning capacity, medical expenses and medical care.

70. As a result of the acts and/or omissions of one or more of the Defendants, Plaintiffs Ponce and Cano have suffered past and future: loss of care, maintenance, support, service, advice, counsel, reasonable contributions of pecuniary value, loss of companionship and society, loss of consortium, emotional distress and mental anguish as a result of the death of M.C., their minor son.

71. As a result of the acts and/or omissions of one or more of the Defendants, Plaintiffs Ponce and Cano have become obligated to pay reasonable and necessary funeral and burial expenses as a result of the fatal injuries to M.C., their minor son.

72. The above and foregoing acts and/or omissions of the Defendants, resulting in the serious injuries to Plaintiff Ponce and the fatal injuries to M.C., a deceased minor child, have caused actual damages to Plaintiffs in excess of the minimum jurisdictional limits of the Court.

### IX. Conclusion and Prayer

73. For the reasons presented herein, Plaintiffs pray that Defendants be cited to appear and answer, and that upon a final trial of this cause, Plaintiffs recover judgment against Defendants for:

    a. actual damages;
    b. economic and non-economic damages;
    c. prejudgment and post-judgment interest beginning March 19, 2021;
    d. costs of suit; and
    e. all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**

  /s/ E. Todd Tracy
E. Todd Tracy (Lead Counsel)
State Bar No. 20178650
TTracy@vehiclesafetyfirm.com
Wendell P. "Chip" Martens, Jr.
State Bar No. 24002528
CMartens@vehiclesafetyfirm.com
Garrett D. Rogers
State Bar No. 24110295
GRogers@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2022, a true and correct copy of the foregoing document was caused to be served on all counsel of record in accordance with a manner authorized by the Federal Rules of Civil Procedure.

  /s Garrett D. Rogers
E. Todd Tracy
Wendell P. "Chip" Martens, Jr.
Garrett D. Rogers